IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMBROSIO SALAZAR JR., | ) | 4:11CV3207 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| NORFOLK REGIONAL CENTER, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment. (Filing No. 65.) Also pending is Plaintiff's Motion to Deny Defendants' Summary Judgment Motion (filing no. 72), Motion in Opposition to Defendants' Reply Brief (filing no. 77), Motion to Deny Defendants' Dispositive Motion (filing no. 78), Motion for the Appointment of Counsel (filing no. 80) and Motion for Preliminary Injunction (filing no. 82). As set forth below, Defendants' Motion for Summary Judgment is granted and Plaintiff's claims are dismissed with prejudice. Plaintiff's pending Motions are denied.

## I. BACKGROUND

Plaintiff Ambrosio SaLazar, Jr., a "Mexican" American, filed his original Complaint in this matter on November 21, 2011. (Filing No. 1 at CM/ECF p. 7.) Plaintiff's original Complaint contained claims stemming from an altercation he had with "Henry" at the Norfolk Regional Center ("NRC"). (*Id*.) At that time, Plaintiff and "Henry" were both NRC patients and, as a result of the altercation, NRC staff placed Plaintiff in restraints. (*Id*.) However, "Henry," a "Caucasian," was not placed in restraints. (*Id*.) Plaintiff alleged Fourteenth Amendment claims related to the tightness of his restraints and an equal protection claim against Defendants. (*Id*.)

On January 13, 2012, Plaintiff moved to voluntarily dismiss claims against the Mental Health Board of Platte County and Carl K. Hart, Jr., because they had no involvement in this matter. (Filing No. 10.) On February 14, 2012, the court granted Plaintiff's Motion to Dismiss and conducted an initial review of his claims against the remaining Defendants. (Filing No. 11.) In doing so, the court concluded that Plaintiff had failed to state a Fourteenth Amendment claim related to the tightness of his restraints. (*Id*. at CM/ECF pp. 5-6.) However, the court gave Plaintiff an opportunity to file an amended complaint. (*Id*.)

On March 12, 2012, Plaintiff filed an Amended Complaint. (Filing No. 12.) The court reviewed Plaintiff's Amended Complaint, dismissed Plaintiff's monetary damages claims against the NRC and the named individual Defendants in their official capacities, and allowed Plaintiff's remaining claims to proceed to service. (Filing No. 14.) On November 5, 2012, Defendants filed a Motion for Summary Judgment along with a Brief and an Index of Evidence in support. (Filing Nos. 65, 66, 67, 68, 69, and 70.) Fourteen days later, Plaintiff filed a Motion to Deny Defendants' Motion for Summary Judgment along with a Brief and an Index of Evidence in Support. (Filing Nos. 72, 73, and 74.) Thereafter, Defendants filed a timely Reply Brief.[1] (Filing No. 75.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's

---

[1]Plaintiff subsequently filed a Motion in Opposition to Defendants' Reply Brief (filing no. 77), a Motion to Deny Defendants' Dispositive Motion (filing no. 78), a Motion for the Appointment of Counsel (filing no. 80) and a Motion for Preliminary Injunction (filing no. 82).

statement of material facts." NECivR 56.1(b)(1). Such response must "state the number of the paragraph in the movant's statement of material facts that is disputed" and must contain pinpoint citations to evidence supporting the opposition. *Id*. "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Defendants have submitted a statement of material facts in accordance with the court's Local Rules and properly authenticated evidence. (*See* Filing Nos. 66, 67, 68, 69, and 70.) Plaintiff has responded, but he did not specify the numbered paragraphs in Defendants' statement of material facts that he seeks to dispute. (*See* Filing Nos. 72 and 73.) *See also Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983) (per curiam) (concluding pro se litigants are not excused from compliance with procedural and local rules). Accordingly, this matter is deemed fully submitted and the court adopts the following relevant undisputed material facts.

## II. RELEVANT UNDISPUTED FACTS

1. On June 25, 2010, the Mental Health Board of the Fifth Judicial District, sitting in Platte County, Nebraska ("Mental Health Board"), concluded Plaintiff was "a dangerous sex offender and neither voluntary hospitalization nor other treatment alternatives less restrictive of [his] liberty than Mental Health Board ordered treatment disposition would suffice to prevent the substantial risk of harm described in . . . [Neb. Rev. Stat.] § 71-908."[2] (Filing No. 67 at CM/ECF p. 7.)

---

[2]Neb. Rev. Stat. § 71-908 provides:

> Mentally ill and dangerous person means a person who is mentally ill or substance dependent and because of such mental illness or substance

3

2. The Mental Health Board committed Plaintiff to the Nebraska Department of Health and Human Services for treatment and he was placed in the NRC. (*Id*. at CM/ECF pp. 7, 13.)

3. On July 18, 2010, Plaintiff had a physical altercation with another patient at the NRC, Henry Rubens ("Henry"). (*Id*. at CM/ECF p. 13; Filing No. 73 at CM/ECF p. 3.)

4. Defendants have submitted a NRC security camera's DVD recording of the altercation, which shows Plaintiff throwing a drink in Henry's face. (Filing No. 67, Ex. 3 at 17:32:52.) At that point, both patients engaged in a physical altercation. (*Id*.)

5. Within seconds of the altercation's initiation, NRC staff intervened. (*Id*., Ex. 3 at 17:33:00.) During this intervention, Plaintiff, Henry, and several NRC staff members fell to the ground. (*Id*., Ex. 3 at 17:33:02.)

6. Plaintiff resisted NRC staff as they tried to break up the altercation, but they eventually placed him in restraints. (Filing No. 12 at CM/ECF p. 3; Filing No. 70 at CM/ECF p. 49; Filing No. 73 at CM/ECF p. 3.)

---

dependence presents:

> (1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or
>
> (2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs, including food, clothing, shelter, essential medical care, or personal safety.

7. The NRC's "Behavior Intervention-Restraint & Seclusion" policy requires that patients in restraints be evaluated every eight hours by the medical staff for the patient's safety and to check if the patient still meets the criteria for continued restraint. (Filing No. 70 at CM/ECF pp. 1-19, 61, 63.)

8. In order for Plaintiff to be released from restraints, he needed "to be cooperative, calm, and non-threatening for 24 hours" and his restraints would be "gradually reduced." (*Id*. at CM/ECF p. 63.)

9. While Plaintiff was in restraints his behavior and health were assessed, on a rotating basis, by Nebraska Department of Health and Human Services ("NDHHS") Psychiatrist Dr. Stephen O'Neill ("O'Neill"), NDHHS Psychiatrist Dr. Daryl Stephenson ("Stephenson") and two physician's assistants. (*Id*. at CM/ECF p. 67-69.)

10. At one point, Plaintiff met his restraint release criteria for 24 hours and Stephenson ordered a gradual reduction, which involved removing Plaintiff's ankle restraints. (*Id*.) However, Plaintiff ultimately "refused to cooperate." (Filing No. 73 at CM/ECF p. 7.)

11. Because Plaintiff refused to cooperate, he was restrained for a prolonged period of time. (Filing No. 70 at CM/ECF p. 49.)

12. O'Neill and Stephenson both submitted affidavits stating that the use of restraints on Plaintiff was reasonable, necessary, and in the best interests of Plaintiff, other NRC patients, and NRC staff. (*Id*. at CM/ECF pp. 63, 70-71.)

13. On October 1, 2010, Plaintiff kicked NRC staff member Daniel Haycock while he was securing Plaintiff's foot restraint. (Filing No. 69 at CM/ECF p. 17, 39, 44.) Plaintiff was removed from NRC for assaulting Haycock and states that he was

5

"more than eager to accept the blame." (Filing No. 73 at CM/ECF p. 14.) Plaintiff is currently confined in the Lincoln Correctional Center in Lincoln, Nebraska. (*See* Docket Sheet.)

### III. ANALYSIS

#### A. Standard of Review

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion" Fed. R. Civ. Pro. 56(a). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

#### B. Defendants' Motion for Summary Judgment

Defendants argue that, among other things, they are entitled to summary judgment because Defendants are entitled to qualified immunity in their individual capacities. (Filing No. 66 at CM/ECF pp. 2-9.) The court agrees.

6

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether an official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). A court "may consider these factors in either order." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011). With these factors in mind, the court now turns to Plaintiff's claims.

   1.   *Tight Restraints*

As discussed above, the Mental Health Board concluded Plaintiff was a "dangerous sex offender" and he was involuntarily confined as a patient in the NRC.

7

(Filing No. 67 at CM/ECF p. 7.) As a NRC patient, Plaintiff's "confinement [was] subject to the same safety and security concerns as that of a prisoner." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). However, because Plaintiff was confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply. *Id.* at 875. Indeed, the rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment. *Youngberg v. Romeo*, 457 U.S. 307, 324–25 (1982).

Nevertheless, the Eighth Circuit uses the same Eight Amendment deliberate indifference standard to determine whether an involuntarily confined individual's conditions of confinement are cruel and unusual. *See, e.g., Revels*, 382 F.3d at 874 (analyzing involuntarily committed individual's claim as if he were a prisoner with standing to make an Eighth Amendment claim). This deliberate indifference standard has both an objective element, that the defendant deprived plaintiff of "the minimal civilized measure of life's necessities," and a subjective element, that the defendant acted with a sufficiently culpable state of mind. *See id.* at 875 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 342 (1981); *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). "The subjective component of deliberate indifference requires proof that [a Defendant] actually knew of and recklessly disregarded a substantial risk of serious harm." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006) (citation omitted).

Here, Plaintiff's affidavit and Index of Evidence indicate that Plaintiff filed a "Problem Solving Worksheet" on August 28, 2010, and made a call to the Ombudsman on August 30, 2010, to report that he was not getting enough slack in his restraints to reach the toilet paper when using the restroom. (Filing No. 47 at CM/ECF pp. 11, 13; Filing No. 48 at CM/ECF pp. 53-56, 64.) Plaintiff's Index of Evidence also includes daily documentation records indicating that nurses noticed bruising around his waist on August 30, 2010. (Filing No. 48 at CM/ECF pp. 56 and 57.) However, NRC staff responded to the "Problem Solving Worksheet" by providing that the "restroom belt would be loosened to notch 5" and that staff would "give patient toilet paper for use." (*Id.* at CM/ECF p. 64.) In addition, the

8

Ombudsman investigated Plaintiff's call and informed him that the NRC Director of Programming had assured the Ombudsman that there would be no further problems regarding Plaintiff's concerns. (*Id*. at CM/ECF p. 55.) These documents show that Defendants did not ignore Plaintiff's complaints regarding the tightness of his restraints.

At some point after the NRC staff and the Ombudsman addressed Plaintiff's concerns, he states that he asked an NRC nurse why the restraints were "so tight." (Filing No. 12 at CM/ECF p. 4.) However, Plaintiff does not point the court to, and the court cannot find, probative evidence showing that he made any reports or complaints regarding pain or discomfort as a result of his restraints after August 30, 2010. (Filing No. 12 at CM/ECF p. 4.) Indeed, "a properly supported motion for summary judgment is not defeated by self-serving affidavits." *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) (quoting *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006).) Rather, a plaintiff "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

Viewing the facts in a light most favorable to Plaintiff, he has failed to provide sufficient evidence to show that Defendants recklessly disregarded a substantial risk of serious harm regarding the tightness of his restraints. Defendants are therefore entitled to qualified immunity for Plaintiff's Fourteenth Amendment claims regarding the tightness of his restraints.

2.   *Duration of Restraints*

Liberally construed, Plaintiff may also be alleging that the length of time he was in restraints violated his constitutional rights. (Filing No. 12.) "[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Youngberg*, 457 U.S. at 316 (quotation and citation omitted). "This interest survives criminal conviction and

incarceration. Similarly, it must also survive involuntary commitment." *Id*. Yet this interest is not absolute. *Id*. at 319–20. "In operating an institution such as [the NRC], there are occasions in which it is necessary for the State to restrain the movement of residents—for example, to protect them as well as others from violence." *Id*. at 320. "The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint . . . is such as to violate due process." *Id*.

"[W]hether [a patient's] constitutional rights have been violated must be determined by balancing [their] liberty interests against the relevant state interests. If there is to be any uniformity in protecting these interests, this balancing cannot be left to the unguided discretion of a judge or jury." *Id*. at 321. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id*. The State "may not restrain residents except when and to the extent professional judgment deems this necessary to assure safety." *Id*. at 324. Therefore, NRC patients "enjoy[ ] constitutionally protected interests in . . . reasonably nonrestrictive confinement conditions." *Id*. To determine if

> the State has met its obligations . . . , decisions made by the appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type—often, unfortunately, overcrowded and understaffed—to continue to function. A single professional may have to make decisions with respect to a number of residents with widely varying needs and problems in the course of a normal day. The administrators, and particularly professional personnel, should not be required to make each decision in the shadow of an action for damages.

*Id*. at 324–25.

Here, the undisputed facts show that Plaintiff was restrained from July 18, 2010, to October 1, 2010. While Plaintiff was restrained, his behavior and health were assessed, on a rotating basis, by two NDHHS psychiatrists and two physician's assistants. (Filing No. 70 at CM/ECF p. 68-69.) Plaintiff had the opportunity to be gradually released from restraints by being "cooperative, calm, and non-threatening for 24 hours," however he admittedly chose not to cooperate. (*Id*. at CM/ECF p. 63.) Because Plaintiff refused to cooperate, he was restrained for a prolonged period of time and O'Neill and Stephenson both submitted affidavits stating that the use of restraints on Plaintiff was reasonable, necessary, and in the best interests of Plaintiff, other NRC patients, and NRC staff. (*Id*. at CM/ECF pp. 49, 63, 70-71.) These affidavits are further supported by the fact that Plaintiff later kicked, and pled guilty to assaulting, an NRC staff member.[3] (Filing No. 69 at CM/ECF p. 17, 39, 44; Filing No. 73 at CM/ECF p. 14.)

In short, Plaintiff has failed to present sufficient probative evidence showing that Defendants' decision to restrain him from July 18, 2010, to October 1, 2010, was a departure from accepted professional judgment, practice, or standards. Accordingly, Defendants are entitled to qualified immunity for Plaintiff's Fourteenth Amendment claims regarding the length of time Plaintiff was in restraints.

    3.    *Equal Protection*

In addition to his claims regarding his restraints, Plaintiff has alleged that Defendants violated his equal protection rights. (Filing No. 12.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish an equal protection violation, Plaintiff must show that he "was treated differently than other

---

[3]Plaintiff also has a long history of violence. (*See, e.g.,* Filing No. 87.)

persons who were in all relevant respects similarly situated." *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009) (internal quotation omitted).

Liberally construed, Plaintiff, a "Mexican" American, alleges Defendants treated him differently than Henry, a similarly situated "Caucasian." (Filing No. 1; Filing No. 12 at CM/ECF pp. 3-5.) Specifically, Plaintiff alleges he was placed in restraints, but Henry was not. (*Id*.) It is unclear from the record whether Henry was placed in restraints as a result of the altercation with Plaintiff. However, even if he was not, Plaintiff has failed to show that he was similarly situated to Henry in all relevant respects.

The record before the court shows that Plaintiff resisted staff as they tried to break up the altercation (filing no. 12 at CM/ECF p. 3) and refused to cooperate with staff after he was placed in restraints (filing no. 73 at CM/ECF p. 7).[4] Plaintiff did not submit any evidence showing that Henry resisted staff during the altercation or refused to cooperate with staff thereafter. Plaintiff also did not submit any evidence showing that he was treated differently from any other individual at the NRC. Viewing the facts in a light most favorable to Plaintiff, he has failed to present sufficient probative evidence that would permit a finding that Defendants violated his equal protection rights. *See generally Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007) (concluding city police officers' decision to cite male suspect and not female suspect did not violate the Equal Protection Clause where female suspect cooperated with officers, and was remorseful, whereas male suspect failed to cooperate with officers and refused to give them a straight answer). Accordingly, Defendants are also entitled to qualified immunity on Plaintiff's equal protection claims.

---

[4]The DVD recording of the altercation also appears to show that Plaintiff initiated the altercation by lunging toward Henry. (*See* Filing No. 67, Ex. 3 at 17:32:52.) In contrast to this evidence, Plaintiff has alleged that Henry "spit hot coffee" in his face and "started hitting [him]." (Filing No. 12 at CM/ECF p. 3.)

### 4. *Injunctive Relief*

As discussed above, the court previously dismissed Plaintiff's monetary damages claims against the NRC and the named individual Defendants in their official capacities. (Filing No. 14.) However, Plaintiff's injunctive relief claims against the NRC and the named individual Defendants in their official capacities were allowed to proceed. (*Id*.) *See also Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996) ("*Ex parte Young* recognized that suits may be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law.") Because the court has concluded that the individual Defendants are entitled to qualified immunity for Plaintiff's claims, no constitutional violations have occurred and there is no underlying wrong for which any state official could be enjoined.

### C.  **Plaintiff's Motion for Preliminary Injunction**

Also pending is Plaintiff's Motion for Preliminary Injunction. (Filing No. 82.) In this Motion, and associated "Memorandum of Law," Plaintiff asks this court to enjoin a potential future return to the NRC after he finishes his five-year sentence at the Lincoln Correctional Center. (Filing No. 83 at CM/ECF p. 1.) The standards set forth by *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981), apply to Plaintiff's request. In *Dataphase*, the court, sitting *en banc*, clarified the factors district courts should consider when determining whether to grant a motion for preliminary injunctive relief:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

13

*Id.* at 114. "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined . . . ." *Dataphase*, 640 F.2d at 113.

After carefully considering the court's findings above, and Plaintiff's request, the *Dataphase* factors do not favor Plaintiff to a degree sufficient to warrant issuance of preliminary injunctive relief. Indeed, Plaintiff seeks injunctive relief to prevent uncertain and contingent events that may not occur at all. Accordingly, his Motion for Motion for Preliminary Injunction is denied.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (filing no. 65) is granted and Plaintiff's claims are dismissed with prejudice.

2. Plaintiff's Motion to Deny Defendants' Summary Judgment Motion (filing no. 72), Motion in Opposition to Defendants' Reply Brief (filing no. 77), Motion to Deny Defendants' Dispositive Pleading (filing no. 78), Motion for the Appointment of Counsel (filing no. 80) and Motion for Preliminary Injunction (filing no. 82) are denied.

3. A separate judgment will be entered in accordance with this Memorandum and Order

DATED this 11th day of April, 2013.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.